

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IFC CREDIT CORPORATION, assignee of Norvergence, Inc., | )<br>)<br>) |
| Plaintiff, | ) 04 C 5906<br>) |
| v. | ) Judge Ronald A. Guzmán<br>) |
| BURTON INDUSTRIES, INC. and CLARK JOHNSON, | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

IFC Credit Corporation has sued Burton Industries, Inc. ("Burton") and Clark Johnson for breach of an equipment lease and breach of a guaranty. Before the Court is defendants' motion to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), for lack of personal jurisdiction, and 12(b)(3), for improper venue. For the reasons set forth below, the Court denies the motion.

## Facts

On or about February 5, 2004, plaintiff's assignor, Norvergence, Inc. ("Norvergence"), a non-party, entered into Equipment Rental Agreement No. 22123801 (the "Agreement") with Burton for the lease of telecommunications equipment (the "Equipment"). (Compl. ¶ 6a[1].) Plaintiff is an Illinois corporation with its principal place of business in Morton Grove, Illinois.

---

[1] There are two paragraphs labeled "6" in the complaint. We refer to the first paragraph 6 as paragraph 6a and the second as paragraph 6b.

(*Id.* ¶ 1.) Defendant Burton is a Michigan corporation with its principal place of business in Goodrich, Michigan. (*Id.* ¶ 2.) Defendant Johnson, who is the president of Burton, is a citizen of Michigan who resides in Goodrich, Michigan. (*Id.* ¶ 3.)

At all times prior to the execution of the Agreement, Burton negotiated solely with Norvergence to select the Equipment and establish the payment terms of the Agreement. (*Id.* ¶ 6b.) On May 14, 2004, Burton executed a Delivery and Acceptance Certification (the "D & A") in which it certified that it had received, inspected and accepted the Equipment leased under the Agreement and that it had read and understood all terms of the Agreement. (*Id.* ¶ 7.) At no time prior to the execution of the Agreement did Burton or any of its representatives have any contact with plaintiff. (*Id.* ¶ 8.)

The Agreement requires Burton to make sixty monthly rental payments each in the amount of $1,304.83. (*Id.* ¶ 12.) The Agreement also contains a clause titled "Applicable Law" that states:

> This agreement shall be governed by, construed and enforced in accordance with the laws of the State in which Rentor's principal offices are located or, if this Lease is assigned by Rentor, the State in which the assignee's principal offices are located, without regard to such State's choice of law considerations and all legal actions relating to this Lease shall be venued exclusively in a state or federal court located within that State, such court to be chosen at Rentor or Rentor's assignee's sole option.

(*Id.*, Ex. 1, Agreement.)

The Agreement also contains a guaranty, signed by defendant Johnson, in which he promised to pay all sums due under the lease, if Burton defaulted. (*Id.*) In capital letters, the guaranty states: "The same state law as the rental will govern guaranty. You agree to jurisdiction and venue as stated in the paragraph titled applicable law of the rental." (*Id.*)

2

After the Agreement, the guaranty and the D & A were executed, Norvergence assigned all of its rights, title and interest in the Agreement and the Equipment to plaintiff. (*Id.* ¶ 9.) Prior to accepting assignment of the Agreement, plaintiff contacted Burton's representative, who confirmed that the Equipment had in fact been received. (*Id.* ¶ 10.) Based on Burton's representations, plaintiff accepted the assignment. (*Id.* ¶ 11.)

Burton and Johnson have defaulted under the terms of the Agreement and the guaranty by failing to make the rental payments. (*Id.* ¶¶ 13, 21.) Plaintiff seeks to recover an amount equal to all past due payments and all payments to come due during the term of the agreement, as well as all late fees, interest and attorney's fees. (*Id.* ¶¶ 15, 22-23.)

## Discussion

Defendants argue that the Court does not have personal jurisdiction over them and that it is not the proper venue for this suit. Plaintiff contends that defendants have waived their objections to personal jurisdiction and venue by virtue of the forum-selection clause in the Agreement. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (noting that objections to personal jurisdiction are waivable and that "litigant[s] may give express or implied consent to the personal jurisdiction of the court" through forum-selection clauses) (internal quotation marks and citations omitted); *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1292 n.4 (7th Cir. 1989) ("Obviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction.") To determine whether defendants have waived their

3

objections, we must decide: (1) whether the clause in the agreement is, in fact, a forum-selection clause; and, if so (2) whether the clause is enforceable.[2]

## The Clause is a Forum-Selection Clause

Whether the clause in the Agreement and guaranty is indeed a forum-selection clause hinges on whether it contains mandatory or permissive language. *Paper Express, Ltd.,* 972 F.2d 753, 757 (7th Cir. 1992); *Calanca,* 510 N.E.2d at 23. Mandatory language indicates that the parties have selected a particular forum, while permissive language simply indicates a preference for a certain forum. *Paper Express, Ltd.,* 972 F.2d at 757. In the present case, the clause says: "[A]ll legal actions relating to this Agreement shall be venued exclusively in a state or federal court located within [the State in which the assignee's principal offices are located]." (Compl., Ex. 1, Agreement.) According to *Paper Express* and *Calanca,* the mandatory language of this clause indicates that the parties selected the courts of Illinois, plaintiff's home state, to resolve their disputes.

Despite its mandatory language, defendants say the provision is not a valid forum-selection clause because it does not actually select a forum. The clause does not say that disputes will be litigated in Illinois. Rather, it says that they will be litigated in the state in

---

[2]Before we can make those determinations, however, we must decide whether these issues are governed by federal or state law. The Seventh Circuit has suggested that federal law governs. *See Northwestern Nat'l Ins. Co. v. Donovan,* 916 F.2d 372, 374 (7th Cir. 1990) (noting that the issue of validity of a forum selection clause is "probably" one of federal law). Because there is little difference between federal and Illinois law, *compare, e.g., Paper Express, Ltd. v. Pfankuch Maschinen GmbH,* 972 F.2d 753, 757 (7th Cir. 1992) (clause is valid if mandatory language is used and enforceable if it is reasonable and was not procured by fraud) *with Calanca v. D&S Mfg. Co.,* 510 N.E.2d 21, 23 (Ill. App. Ct. 1987) (same), and the parties use them interchangeably, so will we. *See Northwestern Nat'l Ins.,* 916 F.2d at 374 (noting that parties can designate law that governs dispute over forum-selection clause).

4

which Norvergence, or its assignee, has its principal office. (*See* Compl., Ex 1, Agreement.) Because any assignee's home state was unknown at the time they signed the Agreement, defendants say that "selection" is too uncertain to be enforced.

The Court disagrees. The clause may not identify a forum by name, but it does select one: the home state of Norvergence or its assignee. Obviously, the location of any assignee's primary place of business was not known to defendants at the time of contracting. Neither, however, was that of Norvergence. Though Norvergence was, apparently, based in New Jersey when the Agreement was signed, the contract does not require it to maintain that base of operations. Thus, defendants had no guarantee that New Jersey would be the site of any future litigation.

Despite the inherent uncertainty, courts have concluded, and plaintiff apparently concedes, that a forum-selection clause identifying the forum solely as one party's principal place of business is valid. *See Paper Express*, 972 F.2d at 757 (clause identified forum as supplier's principal place of business); (Defs.' Reply Br. at 3-4.) Adding an assignee to the equation does not increase that uncertainty; with or without an assignee, the precise location of the forum is unknown until a case is actually filed. *See A.I. Credit Corp. v. Liebman*, 791 F. Supp. 427, 429 (S.D.N.Y. 1992) (upholding validity of clause identifying forum as principal place of business of partnership or any entity to which it transferred promissory note, despite the "element of 'uncertainty' [in] . . . forum selection clause[s] [that] identif[y] a forum by the residency of a party"); *see also Lyon Fin. Servs., Inc. v. Will H. Hall & Son Builders, Inc.*, No. Civ. 04-4383 ADM/AJB, 2005 WL 503371, at *4 (D. Minn. Mar. 4, 2005) (upholding identical clause); *Commerce Commercial Leasing, LLC v. Jay's Fabric Ctr.*, No. Civ. A. 04-4480, 2004 WL 2457737, at *1 n.1 (E.D. Pa. Nov. 2, 2004) (same). *But see IFC Credit Corp. v. Eastcom,*

5

*Inc.*, No. 04 C 6503, 2005 WL 43159, at *1 (N.D. Ill. Jan. 7, 2005) (rejecting identical clause because "the failure to specify a particular jurisdiction renders the lessee incapable of knowing where an assignee might file suit . . . ."). Because the provision in this case is no less definite that any other "principal place of business" clause, it is a valid forum-selection clause.

## The Forum-Selection Clause is Enforceable

A forum-selection clause in a contract is *prima facie* valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances. *Paper Express, Ltd.*, 972 F.2d at 757; *Calanca*, 510 N.E.2d at 23. In determining whether a forum-selection clause is unreasonable, certain factors are considered, such as:

> (1) which law governs the formation and construction of the contract; (2) the residency of the parties involved; (3) the place of execution and/or performance of the contract; (4) the location of the parties and the witnesses participating in the litigation; (5) the inconvenience to the parties of any particular location; and (6) whether the clause was equally bargained for.

*Calanca*, 510 N.E.2d at 23-24 (internal quotation marks, alterations and citation omitted). We will address these factors in reverse order.

Defendants, relying primarily on *Mellon First United Leasing v. Hansen*, 705 N.E.2d 121 (Ill. App. Ct. 1998), contend that the clause was not bargained for equally. In *Mellon*, an Illinois a leasing company sued a California accountant in Illinois state court for breach of an office equipment lease. *Id.* at 123-24. The defendant moved to dismiss, claiming that the court had no personal jurisdiction over her. *Id.* at 123. The plaintiff countered by saying that the lease she had signed contained a forum-selection clause that constituted her consent to being sued in

Illinois. *Id.* at 124. The defendant said the clause should not be enforced because the parties had not negotiated about, or even discussed, it before signing the lease. *Id.*

The *Mellon* court agreed with the defendant. In its view, it would be unreasonable to enforce the clause because: (1) defendant's limited experience running a business made her "akin to an ordinary consumer . . . [rather] than a sophisticated businessperson of stature equal to the leasing company"; (2) the clause was part of "boilerplate language in small print on the back of a preprinted form"; and (3) there was no evidence that the clause had been the subject of any negotiation. *Id.* at 125-26.

Burton says, that like the accountant in *Mellon*, it is David to plaintiff's Goliath: a small, inexperienced business litigating against a sophisticated corporate entity. Because its bargaining power is so inferior to plaintiff's, Burton says, it would be unreasonable to enforce the clause against it.

There are two problems with that argument. First, the affidavit of Clark Johnson, which Burton submits to support it, does no such thing. The affidavit does not say that Burton is a small, newly-minted or otherwise inexperienced entity. It merely states that Johnson is the president of Burton and that his office is located in Goodrich, Michigan. (*See* Johnson Aff. ¶ 1.)

Second, even if Burton's assertions were supported, the Court still would not be persuaded that Burton is a business naif in need of protection from a corporate predator. On its letterhead, Burton describes itself as "Burton Industries, Inc. Designers & Builders of Robotic Process Equipment Automation, Special Machinery & Fixtures," hardly the description of an unsophisticated enterprise. (*See* Defs.' Mem. Supp. Mot. Dismiss, Ex. A, Johnson Aff., Fax Cover.) Moreover, Burton is a corporation, a business form that, by itself, suggests a certain

7

level of sophistication. *See Heller Fin., Inc.*, 883 F.2d at 1291 (noting that defendants, who portrayed themselves as "mere 'dairy farmers,'" were incorporated, indicating that they were "a little more worldly than [their] brief implied"). In short, Burton can take no refuge in *Mellon*.

Burton's reliance on *Williams v. Illinois State Scholarship Commission*, 563 N.E.2d 465 (Ill. 1990) is equally misplaced. In *Williams*, the Illinois Supreme Court held that forum-selection clauses in guaranteed student loan agreements were invalid because they violated the students' due process right of meaningful access to the courts. *Id.* at 484. The Court said that it was against public policy to enforce the clauses because they violated Illinois' general venue statute, which was designed to prevent "ridiculous instances of long-distance forum abuse." *Id.* at 486. Noting that the loan agreements were prepared entirely by the loan company and contained preprinted "boilerplate" provisions, the court held that the agreements were "adhesion contracts, in that the [students] were in a disparate bargaining position, and, if they wanted the loan, were forced to 'take it or leave it.'" *Id.* at 487.

Defendants are not situated similarly to the students in *Williams*. The students had to choose between signing the loan agreements and foregoing a student loan. Defendants did not face a similar choice. If they did not like Norvergence's terms, they could simply have leased telecommunications equipment from someone else. Moreover, most of the student-defendants were indigent. Thus, forcing them to litigate in a distant forum would, in effect, deprive them of their day in court. *Id.* at 482-83. Though Burton asserts that it is a small company, it does not contend that its financial condition is akin to that of an indigent college student. *Williams*, therefore, does nothing to further defendants' cause.

Burton fares no better with its contention that the forum-selection clause was hidden because it is in fine print on the back of the Agreement. Nearly all of the lease provisions are on the back of the Agreement and all are in the same, albeit small, size print. (*See* Compl., Ex. 1, Agreement.) Moreover, though he may not have read them, defendant Johnson obviously knew that there were numerous provisions on the back of the Agreement because he initialed the bottom of that page. (*See id.*) In short, there is nothing about the appearance or structure of the of the Agreement that supports defendants' argument that the forum-selection clause was concealed. *See Calanca*, 510 N.E.2d at 24 (finding that clause was not hidden when it was in same size print as other contract provisions).

Finally, the fact that the parties did not negotiate about the forum-selection clause, (*see* Johnson Aff. ¶¶ 14-16), is no reason to invalidate it. Absent a showing that Burton was inexperienced in commercial matters, which defendants have not made, its failure to object to or negotiate the terms of the clause does not militate in favor of voiding it. *See Dace Int'l, Inc. v. Apple Computer, Inc.*, 655 N.E.2d 974, 978 (Ill. App. Ct. 1995) ("We decline to remedy Dace's failure or inability to object to the clause at the time of contracting, and see no reason to release a sophisticated entity from the consequences of its bargain.").

In short, the few facts we have about Burton suggest that its bargaining power was equal to that of Norvergence. Thus, the sixth *Calanca* factor militates in favor of enforcing the clause.

The fifth *Calanca* factor, the inconvenience of a particular location, favors enforcement as well. Defendants' inconvenience would weigh against enforcing the clause only if it were so great as to deprive them of their day in court. *Calanca*, 510 N.E.2d at 23. Though defendants would rather not litigate in Illinois, they do not say having to do so would be such a hardship that

9

they would have to abandon their defense. Absent that showing, defendants' inconvenience is no reason to invalidate the clause.

The fourth *Calanca* factor, the location of the parties and witnesses, also does not favor defendants. Burton has not identified any witnesses whose testimony could not be procured or who would be seriously inconvenienced if the case proceeds in Illinois. Thus, inconvenience to potential witnesses provides no basis for invalidating the forum-selection clause.

The third *Calanca* factor, however, does favor defendants. Because the Agreement was executed in Michigan, (*see* Johnson Aff. ¶ 11), defendants' home state has some interest in resolving this dispute.

The second *Calanca* factor, the residency of the parties, is a draw. Defendants are citizens of Michigan, while plaintiff is a citizen of Illinois. (Compl. ¶¶ 1-3.) Thus, the second factor favors neither side.

The parties do not address the first *Calanca* factor, the law that governs the formation and construction of the contract. The Agreement's "Applicable Law" provision, however, makes Illinois the governing law. (*See* Compl., Ex. 1, Agreement ("This agreement shall be governed by, construed and enforced in accordance with the laws of the State in which Rentor's principal offices are located or, if this Lease is assigned, by Rentor, the State in which the assignee's principal offices are located, without regard to such State's choice of law considerations . . . .") Thus, the governing law factor favors plaintiff.

In short, as the *Calanca* factors demonstrate, it is not unreasonable to enforce the forum-selection clause in this case. By agreeing to that clause, defendants have waived their personal jurisdiction and venue objections to being sued in this Court.

10

## Conclusion

For the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction and improper venue [doc. no. 3] is denied.

**SO ORDERED**  ENTERED: 5/12/05

HON. RONALD A. GUZMAN
**United States District Judge**