IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IFC CREDIT CORPORATION,<br>assignee of NorVergence, Inc., | )<br>)<br>) |
| Plaintiff, | ) 04 C 5906<br>) |
| v. | ) Judge Ronald A. Guzmán<br>) |
| BURTON INDUSTRIES, INC.<br>and CLARK JOHNSON, | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

IFC Credit Corporation has sued Burton Industries, Inc. ("Burton") and Clark Johnson for their alleged breaches of an equipment lease and a guaranty. The case is before the Court on the parties' cross motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth below, defendants' motion is granted and plaintiff's motion is granted in part and denied in part.

### Facts[1]

In January 2004, NorVergence approached defendants about using its telephone and Internet services. (Defs.' LR 56.1(a) Stmt. ¶ 3.) In a February 2004 meeting, Norvergence told Burton representatives Jeff Johnson, Greg Johnson and David Yanniello that Burton could realize great savings in its telecommunications costs if it used NorVergence, but only if Burton purchased or rented one of its Matrix boxes. (*Id.* ¶ 5.)

---

[1] Unless noted otherwise, these facts are undisputed.

At this meeting, Jeff Johnson signed three documents, a services application, a hardware application and an equipment rental agreement ("ERA"). (*See id.*, Ex. 3, J. Johnson Dep. Exs. 1-3.) The hardware application states, in capital letters: "This is a non-binding hardware application to reserve 'voice as unlimited data™,' high speed T-1 access hardware on the terms below until final credit and engineering approval." (*Id.*, J. Johnson Dep. Ex. 2 at 1.) It also says:

> This Reservation is effective, when accompanied by an Authorized Credit Application and an Equipment Rental Agreement. The Equipment Rental Agreement is non-binding until your application is approved for the MATRIX™ Hardware Solution, the system is mounted in your phone closet, and a "Delivery and Acceptance Receipt" is submitted. If approval is granted, and all parties agree to move forward, we will fulfill our Immediate Savings Guarantee to you by issuing a monthly payment for the cost reduction amount in your Proposal while waiting for the Phone System Vendor to connect all access facilities.

(*Id.*)

NorVergence, however, told Jeff that he "didn't fit their requirements," and asked him to have his father Clark sign the ERA. (Defs.' LR 56.1(a) Stmt. ¶ 10.) Consequently, Jeff mailed the ERA to his father, who was in Arizona, for his signature. (*Id.* ¶ 11.) Clark signed the document but, because he did not initial the second page, NorVergence rejected it. (*Id.* ¶¶ 11-12.)

Subsequently, NorVergence sent Jeff another copy of the ERA, which he again mailed to his father. (*Id.* ¶ 13.) Clark executed the ERA in blank and sent it back to Jeff. (*Id.*) Among other things, the ERA Clark signed says, in capital letters:

> Your duty to make the rental payments is unconditional despite equipment failure, damage, loss or any other problem. Renter is renting the equipment "as is," without any warranties, express or implied, including warranties of merchantability or fitness for a particular purpose in connection with this agreement. If the equipment does not work as represented by the manufacturer or supplier, or if the manufacturer or supplier or any other person fails to provide service or maintenance, or if the equipment is unsatisfactory for any reason, you will make any such claims solely against the manufacturer or supplier or other person and will make no claim against us.

(*Id.*, Ex. 3, J. Johnson Dep. Ex. 3 at 2.) It also says that Clark agrees unconditionally to guaranty Burton's payments under the lease. (*Id.* at 1.)

After Clark signed the ERA, someone altered it by adding the date (02/05/04), the equipment model and description (Matrix 2003 (3 cards)), and the name of the corporate renter (Burton Industries, Inc.). (Def.'s LR 56.1(a) Stmt. ¶¶ 16-17.) Burton never received a counter-signed copy of the ERA from NorVergence. (*Id.* ¶ 18.)

On May 14, 2004, NorVergence delivered a large box to Burton. (*Id.* ¶ 19.) David Yanniello took the box and signed a delivery and acceptance certificate that states:

> The undersigned certifies that is has received and accepted all the Equipment described in the Equipment Rental Agreement between NorVergence, Inc. (Rentor) and the undersigned <u>Burton Industries, Inc.</u> dated <u>02/05/04</u>. The Equipment conforms with our requirements. There are no side agreements or cancellation clauses given outside the Equipment Rental Agreement.
>
> I have reviewed and I understand all of the terms and conditions of the Equipment Rental Agreement. I AGREE THAT THE RENTAL PAYMENT UNDER THE EQUIPMENT RENTAL AGREEMENT WILL BEGIN 60 DAYS FROM THE DATE OF THIS DELIVERY AND ACCEPTANCE CERTIFICATE AND SHALL CONTINUE THEREAFTER FOR THE FULL LENGTH OF THE STATE INITIAL TERM OF THE EQUIPMENT RENTAL AGREEMENT AND IN ACCORDANCE WITH ITS TERMS AND CONDITIONS. I was not induced to sign this by any assurances of the Rentor or anyone else. I have had a reasonable opportunity to inspect the goods.

(*Id.* ¶ 21 & Ex. 7.) No one at Burton ever opened the box. (*Id.* ¶ 20.)

On May 18, 2004, IFC purchased the assignment of the Burton ERA from NorVergence. (*Id.* ¶ 24.) At no time before that date, did Burton have any contact with IFC. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 5.)

No equipment from NorVergence was ever mounted or installed in Burton's phone closet. (Defs.' LR 56.1(a) Stmt. ¶ 27.) Burton never received any services from NorVergence and never made any payments to either NorVergence or IFC. (*Id.* ¶¶ 28-29.)

On June 30, 2004, NorVergence was put into involuntary Chapter 11 bankruptcy by its creditors. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 11.)

## Discussion

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In Counts I and II of its complaint, IFC claims that Burton and Clark breached the ERA and guaranty. To prevail on a contract claim under Illinois law, plaintiff must prove "'(1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant[s]; and (4) a resulting injury to plaintiff.'" *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001) (quoting *Hickox v. Bell*, 552 N.E.2d 1133, 1143 (Ill. App. Ct. 1990)).[2]

Defendants contend that the ERA, by itself, is not a valid contract because it did not identify the equipment to be rented when Clark Johnson signed it. IFC admits that the date, the

---

[2]The parties analyze the issues under Illinois law, so the Court will do the same.

4

equipment model number and card capacity to be leased, and the name of the corporate lessee were added to the ERA after Clark signed it. (*See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 16-17; *compare* Defs.' LR 56.1(a) Stmt., Ex. 3, J. Johnson Dep. Ex. 3, Undated ERA *with id.*, J. Johnson Dep. Ex. 4, ERA dated 02/05/04.) But IFC says those terms are not material, and thus, their absence from the document signed by Clark does not affect the contract's validity.

The Court disagrees. "One of the essential elements for formation of a contract is a manifestation of agreement or mutual assent by the parties to [its] terms." *Allen v. Amber Manor Apartments P'ship*, 420 N.E.2d 440, 446 (Ill. App. Ct. 1981). The absence of an essential contract term suggests that the required agreement is lacking. *Id.* IFC admits that the contract Clark signed described the equipment to be leased simply as "1 Matrix." (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 16-16A; *see* Defs.' LR 56.1(a) Stmt. Ex. 3, J. Johnson Dep. Ex. 3, Undated ERA.) Yet, as the hardware application makes clear, NorVergence purported to rent more than one matrix system. (*See* Defs.' LR 56.1(a) Stmt. Ex. 3, J. Johnson Dep. Ex. 2, Hardware Application (listing three "Matrix Solution" options – "CCS," "Gateway" and "Fraud Protection Technology" – and indicating that Johnson had applied for the latter two).) Moreover, the hardware application says that if his request were approved, Johnson would receive "Card Capacity for: 8 lines . . . with high speed internet access and Fraud Protection Technology," but the ERA Clark signed says nothing about card capacity. (*Compare id. with id.*, Ex. 3, J. Johnson Dep. Ex. 3, Undated ERA.) In other words, the contract IFC seeks to enforce is missing a critical term: the equipment the parties allegedly agreed to rent.

Without that term, the ERA signed by Clark is too indefinite to constitute a binding contract. *See* Restatement (Second) Of Contracts § 33(1)-(2) (stating that a contract can be formed only if its terms "are reasonably certain," *i.e.*, "they provide a basis for determining the

5

existence of a breach and for giving an appropriate remedy").) Absent a specific description, it would be impossible to determine whether NorVergence had provided defendants the bargained-for equipment and, if it had not, to determine the damages defendants suffered as a result. Because a specific description of the equipment to be rented was a material term of the contract, the ERA signed by Clark is not, by itself, an enforceable contract. *Allen*, 420 N.E.2d at 446.

When it is coupled with the hardware application, however, the documents have all of the requisites of a contract. The hardware application supplies the terms missing from the ERA – the date of the contract, the specific description of the equipment to be rented, and the name of the corporate renter – and it sets the conditions precedent for enforcing the contract: "The [ERA] is non-binding until your application is approved for the MATRIX™ Hardware Solution, the system is mounted in your phone closet, and a 'Delivery and Acceptance Receipt' is submitted." (Defs.' LR 56.1(a) Stmt. Ex. 3, J. Johnson Dep. Ex. 2, Hardware Application.) Moreover, the plain language of the hardware application – "This [hardware] Reservation is effective, when accompanied by . . . an Equipment Rental Agreement" (*id.*) – establishes that it is an integral part of the parties' contract.

IFC argues that the parole evidence rule and the ERA's merger clause preclude the Court from considering the hardware application as part of the parties' contract. "Under the parol evidence rule, extrinsic or parol evidence concerning a prior or contemporaneous agreement is not admissible to vary or contradict a fully integrated writing." *Geoquest Prods., Ltd. v. Embassy Home Entm't*, 593 N.E.2d 727, 729 (Ill. App. Ct. 1992). That rule is echoed in the ERA's merger clause, which provides:

> You agree to all the terms and conditions shown above and the reverse side of this Rental, that those terms and conditions are a compete and exclusive statement of our agreement and that they may be modified only by written agreement between

6

you and us. Terms or oral promises which are not contained in this written Rental may not be legally enforced.

(Defs.' LR 56.1(a) Stmt. Ex. 3, J. Johnson Dep. Ex. 3, Undated ERA.) However, the Court has determined as a matter of law that the ERA is not a fully integrated contract. *See Geoquest*, 593 N.E.2d at 730 (stating that "whether a document constitutes a fully integrated agreement" is a question of law). Thus, the parole evidence rule and the merger clause have no application.

The next question is whether the parties' contract as evidenced by the ERA and the hardware application is enforceable. According to its plain language, the contract would not be enforceable until defendants' "[hardware] application [was] approved . . . , the system [was] mounted in [their] phone closet, and a 'Delivery and Acceptance Receipt' [was] submitted." (Defs.' LR 56.1(a) Stmt. Ex. 3, J. Johnson Dep. Ex. 2, Hardware Application.) It is undisputed that the NorVergence equipment was never mounted or installed in Burton's phone closet. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 27.) Because it is undisputed that one of the conditions precedent to contract formation did not occur, the parties do not have a valid and enforceable contract.

The Court's holding that the contract is not valid and enforceable dooms IFC's arguments that various of its provisions obligate defendants to make the rental payments or prohibit them from asserting defenses in this suit. IFC's motion for summary judgment on the contract claims in Counts I and II is, therefore, denied and defendants' motion for summary judgment on those claims is granted.

That leaves IFC's Count III claim for possession of the equipment, also known as a claim for detinue. *See L&LC Trucking Co. v. Jack Freeman Trucking Co.*, 343 N.E.2d 716, 717 (Ill. App. Ct. 1976) (stating that "the gist of [a claim for detinue] is that defendant is wrongfully in possession of personal property belonging to plaintiff.") "A finding for plaintiff is proper in

detinue where it is established that his right to possession is superior to that of defendant." *Id.* Defendants have not moved for summary judgment on this claim, and concede that IFC has a superior right of possession. (*See* Defs.' LR 56.1(a) Stmt. ¶ 28 (stating that defendants did not pay NorVergence or IFC for the box of equipment they received); Defs.' Reply Supp. Mot. Summ. J. & Resp. IFC's Mot. Summ. J. at 27 ("Had IFC requested that Burton return the package delivered to it on May 14, 2004, Burton would have (and still will) [sic] complied.").) Accordingly, IFC's motion for summary judgment on the equipment possession claim is granted.

## Conclusion

For the foregoing reasons, there is no genuine issue of material fact on plaintiff's claims against defendants, and defendants are entitled to judgment as a matter of law on Counts I and II (breach of contract and guaranty claims) and plaintiff is entitled to judgment as a matter of law on Count III (equipment possession claim). Accordingly, defendants' motion for summary judgment [doc. no. 57] on Counts I and II is granted and IFC's cross motion for summary judgment [doc. no. 62] is denied as to Counts I and II but is granted as to Count III. Defendants are ordered to deliver the equipment to IFC within fourteen days of the date of this Order. This case is terminated.

**SO ORDERED.** ENTERED: 6/25/2007

HON. RONALD A. GUZMAN
United States District Judge